UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  S1-4:18 CR 1036 HEA (JMB) |
| | ) | |
| LESLIE WESTFALL, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER, REPORT, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**[1]

Currently before the Court are several pretrial motions filed on behalf of Defendant Leslie Westfall.  Some of these motions were filed by Westfall's court-appointed counsel, and some were filed pro se.  The motions are summarized in the following table:

| ECF No. | Title or Subject of Motion | Gov't Response ECF No. |
|---|---|---|
| 221 | *Pro Se* Motion to Dismiss | 286 |
| 225 | Motion for Disclosure of Grand Jury Testimony | 240 |
| 226 | Motion for Disclosure of Information Surrounding the Anonymous Tip | 241 |
| 227 | Motion to Prohibit State Employee Testimony to Enforce Federal Firearms Law | 286 |
| 278 | *Pro Se* Motion to Compel Evidence that Supports Probable Cause | 286 |
| 279 | *Pro Se* Motion to Compel Evidence of Exclusive Jurisdiction | 286 |
| 282 | Motion to Suppress Tangible Evidence Allegedly Recovered from a 2019 Cadillac CTS | 286 |

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(b).

The issues raised in several of these pending motions overlap with each other, as well as with issues previously decided by our Court. Westfall has not identified valid reasons to reconsider issues previously decided in this matter, and any motions making such challenges may be denied on that basis alone. Additionally, several of the pending motions have been filed pro se, often with a parenthetical annotation "Appearing as co-counsel." Westfall is represented in this matter. He is presently on his fourth court-appointed attorney and the undersigned denied his most recent request for new counsel. [ECF Nos. 283, 288] A represented defendant should normally communicate with the Court through counsel. "There is no constitutional or statutory right to simultaneously proceed pro se and with benefit of counsel." United States v. Agofsky, 20 F.3d 866, 872 (8th Cir. 1994) (citations omitted); United States v. Maxwell et al., 778 F.3d 719, 738 (8th Cir. 2015) (quoting same). See also United States v. Pate, 754 F.3d 550, 553 (8th Cir. 2014) (explaining that "'[a] district court has no obligation to entertain pro se motions filed by a represented party'") (quoting Abdullah v. United States, 240 F.3d 683, 686 (8th Cir. 2001)). While Westfall's pro se motions could be denied or rejected on this basis, to help move the case forward, the undersigned has elected to consider them herein. Similarly, despite any procedural shortcomings of the pending motions, in order to make a more complete record for review, the undersigned addresses the legal and/or factual bases of such motions.

## INTRODUCTION AND BACKGROUND

This case has a long and complicated history, the early part of which is summarized in an earlier Report and Recommendation of the undersigned. [See ECF No. 128] Nonetheless, a fairly detailed summary is useful to understanding the context of the instant Order, Report, and Recommendation.

On December 12, 2018, the Grand Jury charged Westfall with drug and firearms

offenses.  All of the charges flow from events occurring on October 4, 2018, when St. Louis County, Missouri, Police Officers were conducting undercover surveillance in the area of Wishart Place, in St. Louis County, Missouri.

At the outset of the case, the Court appointed, Henry Miller, Jr., an experienced CJA attorney, to represent Westfall.  Mr. Miller filed a motion to suppress statements and evidence [ECF No. 77], and on August 18, 2019, the Court held an evidentiary hearing on that motion.  On November 1, 2019, the undersigned issued a Report and Recommendation [ECF No. 128] recommending that the Court deny Westfall's motion to suppress physical evidence, and grant in part and deny in part his motion to suppress statements.  Following the issuance of that Report and Recommendation, pretrial matters before the undersigned were terminated.  Defendant objected to that Report and Recommendation, and on December 18, 2019, the Honorable Henry E. Autrey, U.S. District Judge, issued an opinion and order adopting the Report and Recommendation, and Westfall's case was set for trial.  [ECF Nos. 159, 177]

In May 2020, Mr. Miller filed a motion for new counsel to be appointed and Judge Autrey appointed experienced CJA attorney Tory Bernsen to represent Westfall.  Following the change in counsel, and in view of the ongoing Coronavirus pandemic, Westfall's trial was continued.  In late December 2020, Ms. Bernsen filed a motion for leave to file more pretrial motions, most notably she sought leave to challenge a search of the Cadillac that Westfall was reportedly a passenger in during the events leading to the federal charges against him.  [ECF No. 204]  The government opposed that motion, and on February 2, 2021, Judge Autrey denied the motion.  Judge Autrey held that Westfall waived any Fourth Amendment challenge to the Cadillac search by not challenging it earlier.  Judge Autrey also concluded that Westfall failed to show prejudice or any possessory interest in the Cadillac.  [ECF No. 206]

Not long after Judge Autrey's February 2nd Order, the relationship between Westfall and his second attorney, Ms. Bernsen, apparently broke down[2] and she was given leave to withdraw. Judge Autrey appointed experienced CJA Counsel David Bruns to represent Westfall. This change in counsel delayed the trial further.

Between February 2021 and December 2021, Westfall filed several pro se motions and letters, and Mr. Bruns filed several motions on Westfall's behalf. Judge Autrey ruled on some of these matters, some matters were summarily disposed because Westfall is a represented party, and some were later referred to the undersigned. [See, e.g., ECF Nos. 247, 266]

On January 14, 2022, at Westfall's direction, Mr. Bruns filed a motion to withdraw. [ECF No. 257] Following a hearing on January 20, 2022, Judge Autrey granted the motion and appointed Philip Eisenhauer, another experienced CJA attorney, to represent Westfall. Mr. Eisenhauer is Westfall's fourth court-appointed attorney. In the meantime, on January 19, 2022, the Grand Jury returned a superseding indictment against Westfall which—(1) consolidated the counts because Westfall's co-defendants had pleaded guilty, and (2) clarified the allegations of the felon-in-possession of a firearm offense due to an intervening change in the law.[3]

As a result of the superseding indictment, pretrial matters were referred back to the undersigned. Westfall was re-arraigned on January 31, 2022. The undersigned issued an order regarding pretrial motions [ECF No. 270] and advised the parties that the Court would not entertain issues that were previously raised and considered, but the parties could raise any new issues necessitated by the superseding indictment or new discovery. Any previously filed, but as

---

[2] Ms. Bernsen's motion to withdraw indicates that Westfall instructed her to file it. [ECF No. 210]

[3] Westfall's co-defendants were Dante Campbell and Keith Dustin Price. The change in law was brought about by Rehaif v. United States, 139 S. Ct. 2191 (2019).

yet undecided motions were referred to the undersigned to resolve as well.  Thereafter, on Defendant's motion, the undersigned extended the time for filing motions to April 22, 2022.  On April 9, 2022, Mr. Eisenhauer filed a motion to withdraw at Westfall's request, and noted that Westfall wanted an in-person hearing on the matter.  [ECF No. 275]

On April 18, 2022, the undersigned held a hearing on Mr. Eisenhauer's motion to withdraw.  The hearing was contentious, and Westfall was audibly and visibly animated and upset.  Westfall repeatedly advised the Court that Mr. Eisenhauer was not or could not be his attorney.  After considering Westfall's concerns and complaints, including some discussions held ex parte and sealed to preserve any privilege issues, the undersigned advised that the motion to withdraw was denied without prejudice.  The undersigned attempted to explain to Westfall that the Court would take up the previously filed but unresolved motions, that he was not entitled to have the previously ruled upon motions relitigated or reopened, and that the record made manifest that he was not willing to reasonably work with experienced counsel.  The undersigned allowed Westfall to submit two pro se motions for consideration [ECF Nos. 278, 279][4] and reminded him that the deadline for all pretrial motions remained April 22, 2022.  On April 22, 2022, Mr. Eisenhauer filed a motion to suppress evidence seized from the Cadillac.  [ECF No. 282]

On May 9, 2022, the undersigned held a status hearing to verify that the Court had correctly identified all of the pending motions, and to address Westfall's pro se motion for the appointment of new counsel.  [ECF No. 283]  The undersigned again denied the request for new counsel.  Westfall has not identified any reasonable or justifiable dissatisfaction with Mr.

---

[4] At the April 18, 2022, hearing, the undersigned attempted to interpret and describe Westfall's pro se motions.  After the hearing, Westfall mailed a letter to the Court asking that his pro se motions be filed and titled as written on the motions and not as described or interpreted by the undersigned.  [ECF No. 280]

5

Eisenhauer's representation.  The undersigned advised Westfall that his conduct could be viewed as a waiver or forfeiture of his right to court-appointed counsel.  The undersigned attempted to advise Westfall of the pitfalls of self-representation in order to encourage him to work with Mr. Eisenhauer but was often interrupted by Westfall.

The undersigned concludes that all of the pending motions can be resolved on the existing record.

Based on the testimony and evidence adduced at the original evidentiary hearing, having had the opportunity to observe the demeanor and evaluate the credibility of the witnesses, having carefully reviewed the exhibits, and having fully considered the parties' arguments and written submissions, the undersigned makes the following findings of fact, conclusions of law, and recommendations.

## <u>FINDINGS OF FACT</u>

The following findings of fact are taken largely from the prior Report and Recommendation.  [ECF No. 128]

Travis Brown is an officer with the St. Louis County Police Department.  As of the evidentiary hearing, Officer Brown had about six years of experience and had been assigned to the Special Response Unit for about one year.  His unit targeted high crime areas, street crimes, and persistent offenders.  Officer Brown has training and experience in drug investigations, including those involving open-air drug activity.

As a result of citizen complaints about drug-related activity, on October 4, 2018, Officer Brown and other police officers were conducting undercover surveillance in the area of the 1400 block of Wishart Place, in St. Louis County, MO.  At the evidentiary hearing, Officer Brown generally described the surveillance area and his position relative to that area.  (<u>See</u> Gov't Exh.

1B)  Officer Brown was dressed in plain clothes and positioned in an unmarked car.  Officer Brown was accompanied by Officer Dooley.  Officers Brown and Dooley were parked on Wishart Place about four or five houses north of the residence located at 1431 Wishart Place. Their car was parked facing 1431 Wishart Place.  Officer Brown testified that he and Officer Dooley reported their observations during the surveillance over a police radio.

During the surveillance, Officer Brown observed a black Cadillac STS with heavily tinted windows and Kansas license plates circling the area.  The Cadillac eventually stopped in front of 1431 Wishart Place.  Officer Brown observed a tan Ford Explorer pull up next to the Cadillac and the driver of the Cadillac appeared to exchange something with the front seat passenger of the Ford.  Both the Cadillac and the Ford were facing south on Wishart Place.  After the exchange, the Ford departed the area and the police did not attempt to stop the Ford.  During this general time, there were several other persons in front of 1431 Wishart Place, with some people looking up and down the street.

Officer Brown testified that, based on his training and experience, he suspected that the Cadillac and the Ford had engaged in a hand-to-hand drug transaction.  Officer Brown testified that he believed the parties exchanged something because it appeared to involve more than a handshake, but he could not see what was exchanged.  Officer Brown also explained that the Ford and the Cadillac were positioned for a quick get-away.

Officer Brown testified that another black male (not identified by name in the record) looked up the block toward Officer Brown's unmarked vehicle.  Two males then left the area of 1431 Wishart Place, walking toward Officers Brown and Dooley's unmarked vehicle.  The pair split up, with one person approaching the passenger side while the other person approached the driver's side.  Officer Brown was concerned that this encounter could lead to a shootout.  The

person approaching Officer Dooley's side (the passenger side) made aggressive statements.[5] Officer Brown drove off and marked and unmarked vehicles entered the area.

As of the evidentiary hearing, Roy Njeri was an officer with the St. Louis County Police Department with about five years of experience. As of the hearing, he was assigned to the Bureau of Drug Enforcement, but in October 2018, Officer Njeri was assigned to the Special Response Unit. Officer Njeri has experience and training in drug investigations, including investigations involving open-air drug activity. Officer Njeri performed a back-up role in the October 4, 2018, surveillance. Officer Njeri was stationed in a police vehicle near the general area under surveillance. Officer Njeri was not wearing a uniform but was wearing a vest that clearly stated "POLICE" on it. Officer Njeri was accompanied by another officer named Dickerson. Officer Njeri monitored the radio communications of Officers Brown and Dooley and was positioned nearby so that he and Officer Dickerson could respond to the area if necessary.

Based on the information shared on the police radio, Officer Njeri was aware of the suspected hand-to-hand drug transaction and the potentially dangerous encounter Officer's Brown and Dooley were experiencing. Having a concern for his fellow officers' safety, Officer Njeri drove to the area and entered Wishart Place from the south side (from Chicago Heights Blvd.). Another marked vehicle entered Wishart from the north side. Officer Njeri testified that he observed the black Cadillac parked in front of 1431 Wishart Place, facing south. He saw two people exit the Cadillac and approach the residence. Those two people were later identified as Leslie Westfall and Dante Campbell. It is not disputed that Westfall was the passenger. Officer Njeri explained that it appeared to him that Westfall and Campbell exited the Cadillac in haste.

---

[5] Officer Brown testified that the persons approaching the vehicle might have viewed the undercover officers as competition for the drug business.

Officers Njeri and Dickerson exited their police vehicle.  Officer Njeri approached Westfall and Officer Dickerson approached Campbell.  Officer Njeri testified that he was wearing a marked police vest and identified himself as a police officer.  Officer Njeri instructed Westfall to stop but, according to Officer Njeri, Westfall seemed hesitant.  Officer Njeri suspected that Westfall was thinking about fleeing.  Westfall turned toward Officer Njeri and at that point, Officer Njeri saw the butt of gun hanging out of one of Westfall's front pants pockets.  Officer Njeri drew his own gun and ordered Westfall to raise his hands.  Westfall complied and Officer Njeri was able to place Westfall in handcuffs and retrieve a loaded gun from Westfall's pocket.  Officer Njeri also recovered from Westfall a knotted sandwich bag with suspected marijuana and a pill bottle with pills that were later determined to contain Xanax.  Officer Njeri testified that Westfall stated that the suspected drugs were not his when they were removed from his pants.

Westfall was physically compliant with Officer Njeri.  Officer Njeri, however, testified that Westfall was verbally noncompliant—yelling and cursing at the police.  According to Officer Njeri, after he placed Westfall in handcuffs, Westfall told him that Officer Njeri was lucky he drew his gun first because Westfall might have otherwise shot Officer Njeri.

After Westfall was physically secured, the police conducted an inquiry and learned that he had a prior felony conviction.  Westfall was then formally arrested.  Officer Njeri transported Westfall to the police station.  Officer Njeri described Westfall's demeanor during transport as "up and down," and that Westfall repeated that Officer Njeri was lucky that he had his gun drawn.  Westfall also told Officer Njeri that he kept a gun for protection.

Officer Njeri testified that he never questioned Westfall and never read him any Miranda warnings.  During cross-examination Officer Njeri stated he might have thanked Westfall for not

shooting him, but later clarified that if he did thank Westfall for not shooting, it was in response to Westfall's spontaneous statement that Officer Njeri was lucky that Westfall did not shoot him.

Trevor Voss is a St. Louis County Police Officer with about eight years of experience. Prior to working as a police officer, Officer Voss was employed by the Defense Intelligence Agency. Officer Voss observed Westfall's demeanor after Westfall was arrested. Officer Voss testified that, after Westfall was placed inside a police vehicle, Officer Voss "could hear him yelling from outside the police car." (Tr. 64)

Having had the opportunity to observe their demeanor, review the transcripts, and consider the entire factual context, the undersigned credits the testimony of Officers Brown, Njeri, and Voss. Additional findings of fact and relevant credibility determinations are included and implied in the discussion below.

## DISCUSSION, CONCLUSIONS OF LAW, ORDERS, AND RECOMMENDATIONS

### I.     *Pro Se* Motion to Dismiss [ECF No. 221]

Westfall filed a pro se pleading entitled "Pro-Se Motion to Dismiss." In the opening paragraph, he states that the motion is presented "under 28 U.S.C. § 2241 Habeas Corpus Action." The motion is directed to the incident giving rise to the charges against Westfall. Westfall argues that the charges against him must be dismissed because he was illegally detained. In support of this motion, Westfall argues that the police lacked reasonable grounds or reasonable suspicion to support the stop of his person. Westfall contends that, because the police could not say for sure what was passed between the Cadillac and the Ford Explorer, there was no way to tell anything illegal was passed and, therefore, the incident involved only a hunch or unparticularized suspicion. Westfall further argues that Officer Njeri approached him with a gun drawn, ordered him to put his hands up, and then "detained and searched [Westfall] without

being given <u>Miranda</u> warnings."  [ECF No. 221 at 2-3]  Westfall argues that any later-recovered evidence must be suppressed as the fruit of the poisonous tree, noting that the evidence was obtained without any warrant.

The government counters that Westfall's Motion to Dismiss seeks an improper remedy for the wrongs alleged.  The government contends that the that suppression of evidence or statements is the appropriate remedy for Fourth or Fifth Amendment violations, not dismissal of the charges.  The government also argues that the substantive Fourth Amendment issues raised in Westfall's Motion to Dismiss have already been ruled on by the Court in addressing the Motion to Suppress Statements and Tangible Evidence.  [<u>See</u> ECF Nos. 77, 128, 159]

The government is correct in its assessment of the situation—Westfall's seeks a remedy that is not presently available for the harms he alleges.  As the Supreme Court explained in <u>United States v. Blue</u> –

> Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book.

384 U.S. 251, 255 (1966).  <u>See also</u> <u>United States v. Woods</u>, 978 F.3d 554, 566 (8th Cir. 2020) (quoting <u>Blue</u> and noting "the general proposition that the remedy imposed for a rights violation must be commensurate in scope with the violation and must recognize not only the defendant's rights, but also the public's interest in pursuing convictions").  Thus, the remedy Westfall seeks—dismissal of the charges—is not available to him via this motion.

Similarly, to the extent this motion is construed as a challenge to the sufficiency of the government's evidence, pretrial motions such as this are ill-suited to test the sufficiency of the government's evidence.  <u>See</u> <u>United States v. Seawood</u>, 1:17CR42 SNLJ (ACL), 2018 WL

1611672 at *3 (E.D. Mo. Mar. 3, 2015) (explaining that, in criminal cases, a pretrial motion to dismiss is not a proper mechanism to attack the sufficiency of the evidence) (citing United States v. DeLaurentis, 230 F.3d 659, 660 (3d Cir. 2000)).

Furthermore, Westfall is attempting to relitigate issues already decided by the Court.[6]  In the prior Report and Recommendation, the undersigned concluded that the police constitutionally stopped and detained Westfall on October 4, 2018.  The undersigned specifically concluded that, collectively, the officers possessed a reasonable, articulable suspicion sufficient to conduct a Terry stop of Westfall.  [See ECF No. 128 at 9-11]

Westfall's Motion to Dismiss focuses almost exclusively on the suspected hand-to-hand transaction between the Cadillac and the Ford Explorer, but there were other articulable facts as well.  [See id. at 11-12]  Westfall's argument misapprehends the reasonable suspicion standard. Eighth Circuit "precedent rejects any requirement that there must be a definite or certain connection to the criminal activity to support reasonable suspicion."  United States v. Mosely, 878 F.3d 246, 252 (8th Cir. 2017).  And it is the totality of the circumstances, not facts in isolation, that guide the Court's reasonable suspicion analysis.  See United States v. Traylor, 14 F.4th 807 (8th Cir. 2021).  In assessing the totality of the circumstances, the Court may credit a police officer's training and experience, and also consider facts that may otherwise appear innocent.  See United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Gonzalez, 781 F.3d 422, 428 (8th Cir. 2015); see also United States v. Johnson, 31 F.4th 618, 623 (8th Cir. 2022) (explaining that officers may reasonably draw their weapon when they encounter a person

---

[6] Permitting Westfall to relitigate these issues via § 2241 would result in duplicitous litigation of an issue that has been resolved by our Court.  The appropriate recourse is a timely appeal to the Eighth Circuit, but that time has not yet arrived.  Also, § 2241 motions are in the nature of a collateral civil action, not a vehicle to directly address substantive criminal procedure issues such as those Westfall attempts to litigate herein.

suspected is carrying a weapon, even if that person is otherwise compliant).[7]  When all of the relevant facts and circumstances are considered, including the officers' training and experience, there is no doubt that the officers possessed a reasonable, articulable suspicion that crime was afoot, and that Westfall was somehow involved.

It is recommended that the Court deny Westfall's pro se Motion to Dismiss.

## II.    <u>Motion for Disclosure of Grand Jury Testimony</u> [ECF No. 225]

Westfall moves the Court for an order, pursuant to Fed. R. Crim. P. 6(e)(3)(E), compelling the disclosure of Grand Jury testimony associated with his Indictment.[8]  As his grounds for this motion, Westfall avers that he "needs the testimony to attack the indictment and a probable cause finding."  [ECF No. 225]  The government opposes the motion, noting that relevant precedent generally precludes defendants from challenging a Grand Jury's probable cause determination.

Westfall is not presently entitled to the Grand Jury testimony.  "A criminal defendant is entitled to rather limited discovery, with no general right to obtain the statements of the Government's witnesses before they have testified."  <u>Degen v. United States</u>, 517 U.S. 820, 825 (1996) (citing Fed. R. Crim. P. 16(a)(2) and 26.2).  If exculpatory in nature, the government must disclose witness statements pursuant to its <u>Brady</u> obligations.[9]  Absent a constitutional duty to disclose under <u>Brady</u>, witness statements are generally protected from pretrial discovery pursuant

---

[7] "A suspicion on the part of police that a person is involved in a drug transaction supports a reasonable belief that the person may be armed and dangerous because weapons and violence are frequently associated with drug transactions."  <u>United States v. Crippen</u>, 627 F.3d 1056, 1063 (8th Cir. 2010); <u>See</u> also <u>United States v. Green et al.</u>, 946 F.3d 433, 439 (8th Cir. 2019) (quoting same); <u>Haynes v. Minnehan et al.</u>, 14 F.4th 830, 836 n.5 (8th Cir. 2021).

[8] For purposes of deciding this motion, the undersigned construes the motion as relating to both the initial Indictment and the Superseding Indictment.

[9] <u>See</u> <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

to the Jencks Act.  See 18 U.S.C. § 3500; United States v. White, 750 F.2d 726, 729 (8th Cir. 1984).  Under the Jencks Act, and pursuant Fed. R. Crim. P. 26.2, a witness's prior statements must normally be disclosed to the defense only after that witness has testified, and only if the prior statements relate to the subject matter of their testimony and only if the statements are in the government's possession.  See United States v. Jewell, 614 F.3d 911, 924-25 (8th Cir. 2010). Furthermore, under the Jencks Act, discoverable witness statements include written statements signed or adopted/approved by the witness, verbatim recordings or transcripts of oral statements, and Grand Jury testimony.  See, e.g., United States v. Bolden, 545 F.3d 609, 623 (8th Cir. 2008) (explaining that an agent's rough interview notes are not discoverable under the Jencks Act); United States v. Price, 542 F.3d 617, 621-22 (8th Cir. 2008) (noting that agent reports are not normally discoverable where the witness did not approve or adopt the information therein); United States v. Kamerud, 326 F.3d 1008, 1015 (8th Cir. 2003).  In our District, although not required, the government normally produces witness statements the week before trial.  Therefore, if a witness testifies at trial and that witness also testified to the same matters before the Grand Jury, after that witness' trial testimony, the government must provide to Westfall the relevant portions of that witness' Grand Jury testimony.

Apart from and in addition to the Jencks Act and Brady obligations, Grand Jury testimony and evidence is generally protected from disclosure by Fed. R. Crim. P. 6(e).  To compel disclosure of Grand Jury information, "a defendant must allege a 'particularized need' with support for the records and may not seek them merely as a fishing expedition."  United States v. Elmi, 2021 WL 2390247 at *2 (D. Minn. June 11, 2021); see also United States v. Sileven, 985 F.2d 962, 965-66 (8th Cir. 1993) (explaining that disclosure of Grand Jury material rests within the discretion of the District Court and upon a showing of a particularized need).

14

In this case, Westfall has not alleged a "particularized need" that has been legally recognized. To the contrary, Westfall's stated purpose is to attack the Grand Jury's probable cause finding. Tellingly, Westfall's motion lacks citation to any caselaw supporting his proffered need. And the government has correctly noted that the Supreme Court has held that a grand jury's indictment "is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." Costello v. United States, 350 U.S. 359, 363 (1956). Thus, criminal defendants cannot generally mount a pretrial attack on the sufficiency of a grand jury's indictment, see id., and the courts do not permit such defendants to second guess a grand jury's probable cause determination, see Kaley v. United States, 571 U.S. 320, 328 (2014).[10]

Westfall's motion to disclose Grand Jury information is denied.

III.     **Motion for Disclosure of Anonymous Tip Information** [ECF No. 226]

Westfall moves the Court to compel the government to "turn over all information surrounding the anonymous tip. This includes the identity of the person, who he/she talked to, if there is any written memorandum concerning the tip, if this person has any history of supplying information." [ECF No. 226].

The government opposes the motion. The government acknowledges that the surveillance that ultimately resulted in Westfall's arrest was initiated after the police received complaints from "anonymous citizens within the area that there was high drug activity going on at the 1400 block of Wishart." [ECF No. 241, (quoting ECF No. 104)] The government contends that the identity of any tipster is not subject to discovery because those persons are not necessary witnesses to the adjudication of the charges. [Id. (relying on United States v. Bradley,

---

[10] To the extent this motion could arguably be construed as a challenge to the sufficiency of the government's evidence, pretrial motions are ill-suited to test the sufficiency of the government's evidence. See Seawood, 1:17CR42 SNLJ (ACL), 2018 WL 1611672 at *3.

924 F.3d 476, 481 (8th Cir. 2019); United States v. Hollis, 245 F.3d 671, 674 (8th Cir. 2001))] The government argues that the tip information served only to initiate the surveillance but not any subsequent Fourth Amendment activity.

In a criminal case, the government enjoys a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957). That privilege "is based on public interest in effective law enforcement, but that interest must be balanced by the requirement of fundamental fairness." United States v. Lapsley, 263 F.3d 839, 842 (8th Cir. 2001) (Lapsley I) (citing Roviaro, 353 U.S. at 59-60; United States v. Hurse, 453 F.2d 128, 129 (8th Cir. 1971)). Thus, "[w]here the disclosure of an informer's identity … is relevant and helpful to the defense of an accused, or is essential to a fair determination of the cause, the privilege must give way." Roviaro, 353 U.S. at 60-61; Lapsley I, 263 F.3d at 842 (quoting Roviaro).

It is a defendant's burden to show a need for disclosure of a confidential informant's identity. See United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998). "While there is no litmus test for determining when disclosure is required, [the Eighth Circuit] ha[s] held that perhaps the most important factor for a court in this circumstance to consider is whether the [confidential informant's] information is material to the defense." United States v. Lapsley, 334 F.3d 762, 764 (8th Cir. 2003) (Lapsley II) (citing United States v. Harrington, 951 F.2d 876, 877 (8th Cir. 1991)). "Consequently, disclosure is typically not required when the informant merely convey[s] information to the government, but neither witness[es] nor participat[es] in the offense." Id. (citations and internal quotations omitted). In this regard, some cases make a distinction between informants who are "tipsters" and those who witnessed or participated in the

charged crime.  See, e.g., United States v. Gonzalez-Rodriguez, 239 F.3d 948, 951 (8th Cir. 2001) (finding "the informant was merely a 'tipster'—someone who conveys information to the government but who does not participate in the offense—and not material to [the defendant's] defense") (citing cases); see also United States v. House, 604 F.2d 1135 (8th Cir. 1979).

In the present case, Westfall offers no legitimate reasons for compelling the disclosure of any tipsters.  Apart from the fact that the record indicates that the tipsters were anonymous, thereby making it impracticable or impossible to provide most of the requested information, there is no reason to conclude that these tipsters would provide relevant testimony to the specific charges against Westfall, all of which flow from his interactions after he and a co-defendant arrived at Wishart Place while the police happened to be surveilling the area.  Stated differently, it does not matter why the police were surveilling the area that day.  It could have been based on a tip, a hunch, or no reason at all; they were there and, according to the allegations, Westfall arrived with another man in a Cadillac, the police observed in a suspected hand-to-hand drug transaction involving the Cadillac, shortly thereafter Westfall exited the Cadillac, and the police encountered Westfall nearby, allegedly in possession of a loaded gun and drugs.

Westfall's motion to compel information concerning the anonymous tip information is denied.

## IV. Motion to Prohibit State Employee Testimony to Enforce Federal Firearms Law [ECF No. 227]

Westfall asks the Court to "prohibit any employee … from testifying to enforce federal firearms law."  [ECF No. 227]   Westfall's motion rests on Missouri's Second Amendment Preservation Act, Mo.Rev.Stat § 1.410-1.485 (hereinafter "the Act").   Westfall's motion references some, but not all, of the pertinent provisions of the Act.  Namely, he asks the Court to invoke § 1.450, which reads in part—

> No entity or person, including any police officer or employee of this state or any political subdivision of this state, shall have authority to enforce or attempt to enforce any federal acts, laws, executive orders, administrative orders, rules, regulations, statutes, or ordinances infringing on the right to keep and bear arms as described under section 1.420.

The government notes that Westfall has previously sought relief pursuant to the Act and the Court granted no relief.[11]   The government further argues that the instant motion to prohibit testimony should be denied on the merits because:  (1) the Supremacy Clause of the United States Constitution precludes nullification of federal laws; (2) the instant federal charges do not infringe on Westfall's gun rights under federal or Missouri law; (3) the Act applies only to "law-abiding citizens" and Westfall does not meet that standard; and (4) Missouri law cannot limit testimony in a federal case.  [ECF No. 286 at 7-8]

Westfall's motion to prohibit testimony should be denied.  As a threshold matter, the Act applies only to the rights of law-abiding citizens and defines "the term 'law-abiding citizen' [to] mean a person who is not otherwise precluded under state law from possessing a firearm."  See § 1.480(1).  The undersigned finds that Defendant's arguments are foreclosed by Judge Autrey's prior conclusion that Westfall is not a "law-abiding citizen" under the Act.  [ECF No. 266, Opinion Memorandum and Order at 6 (finding that Westfall "is 'otherwise precluded from possessing a firearm under state law'")][12]

---

[11] The government refers to Westfall's prior, unsuccessful habeas corpus motions [ECF Nos. 229, 246, 249] which were denied or returned [ECF Nos. 247, 266].

[12] Westfall is a previously convicted felon, which precludes firearm possession, and he is charged with drug charges and with possessing a firearm in furtherance of a drug trafficking offense.  "Under Missouri law, a person is prohibited from 'possess[ing] a firearm while also knowingly in possession of a controlled substance that is sufficient for a felony violation ….'" United States v. Gilliam, 2022 WL 571540 at *3 (W.D. Mo. Feb. 3, 2022) (recommending denial of challenge to federal firearm indictment pursuant to Missouri's Second Amendment Preservation Act").  Thus, even if the undersigned could revisit the Judge Autrey's prior conclusion, his finding that Westfall is not entitled to rely on the protections purportedly

Furthermore, even if the Court were to reconsider Westfall's argument because it is now presented as a motion to prohibit testimony, the motion should be denied.  As United States Magistrate Judge Gaddy recently explained, "[t]he Supremacy Clause provides that the [United States] Constitution, federal statutes, and treaties constitute the supreme Law of the Land." Gilliam, 2022 WL 571540 *2 (quoting Kansas v. Garcia, 140 S. Ct. 791, 810 (2020) (internal quotations omitted)).  Thus, "when a state law stands as an obstacle to the accomplishment of the full purpose and objective of Congress, it is preempted pursuant to the Supremacy Clause." Id. (citing Arizona v. United States, 567 U.S. 387, 399 (2012)).  In this case, Westfall is charged with violating several federal statutes, namely, 21 U.S.C. § 846 (conspiracy to distribute a controlled substance); 21 U.S.C. § 841 (possession with intent to distribute a controlled substance); 18 U.S.C. § 924(d) (possession of a firearm in furtherance of a drug trafficking crime); and 18 U.S.C. 922(g) (felon in possession of a firearm).  These charges are based on federal statues enacted "squarely within Congress's power to legislate under the Commerce Clause" of the United States Constitution.  Gilliam, 2022 WL 571540 *2 (citing United States v. Peck, 161 F.3d 1171, 1174 (8th Cir. 1998) (drug trafficking crimes); United States v. Brown, 72 F.3d 96, 97 (8th Cir. 1995) (§ 924(c)); see also United States v. Joos, 638 F.3d 581, 586 (8th Cir. 2011) (explaining that "[i]t is well settled that Congress did not violate the Second Amendment or exceed its authority under the Commerce Clause when enacting … § 922(g)").[13]  Therefore, because the Constitution has granted Congress the power to enact the criminal statutes at issue, "the Supremacy Clause dictates that [these] federal enactments will prevail over competing state

---

afforded by the Act was correct.
[13] In District of Columbia v. Heller, 554 U.S. 570, 626 & n.26 (2008), the Supreme Court explained that its decision did not "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill" and other "presumptively lawful" limitations on firearms possession.

exercises of power." Gilliam, 2022 WL 571540 *2 (citing United States v. Gillock, 445 U.S. 360, 370 (1980)).

Finally, by its own terms, the Act applies only "to offenses occurring on or after August 28, 2021." Mo.Rev.Stat. 1.480(5). Westfall's alleged crimes occurred in 2018, and "[n]othing in the Act indicates it is to be applied retroactively." Gilliam, 2022 WL 571540 *3; see also United States v. Thomas, No. 4:20 CR 825 RLW (SPM), ECF No. 82 at 7-8 (E.D. Mo. Mar. 29, 2022) (rejecting challenge brought under Missouri's Second Amendment Preservation Act) (citing Univ. of Iowa Hosps. & Clinics v. Shalala, 180 F.3d 943, 951 (8th Cir. 1999)); Hall v. Schneider, 2022 WL 1262491 *3 (E.D. Mo. April 28, 2022) (dismissing prisoner civil rights claim, brought pursuant to 42 U.S.C. § 1983, and rejecting reliance on Missouri's Second Amendment Preservation Act).

The undersigned recommends that the Court deny Westfall's motion to prohibit testimony pursuant to Missouri's Second Amendment Preservation Act.[14]

## V.    *Pro Se* **Motion to Compel Evidence of Probable Cause [ECF No. 278]**

In his pro se Motion to Compel Evidence of Probable Cause [ECF No. 278], Westfall asks the Court to compel evidence from the government that supports probable cause.[15]  In this motion, Westfall reiterates the same basic arguments he raised in his pro se Motion to Dismiss [ECF No. 221], which is addressed above.  In essence, he contends that the police lacked reasonable suspicion because they were unable to identify what was passed, if anything, during

---

[14] Westfall's motion to prohibit testimony encompasses potential trial testimony and is, in effect, a motion in limine.  The undersigned believes a recommendation rather than an order is appropriate.

[15] Westfall does not identify what evidence the government may have that has not been provided in discovery.  While Westfall's pro se Motion to Compel is nominally a discovery motion, it is more akin a collateral attack of, or a motion to reconsider, the Court's prior ruling on his Motion to Suppress Statements and Tangible Evidence.

the suspected hand-to-hand transaction between the Cadillac's driver and the Ford Explorer. He then argues that there was no evidence of probable cause to justify the officers approaching him, and that any evidence is fruit of the poisonous tree. The government opposes this motion for largely the same reasons it opposes Westfall's pro se Motion to Dismiss pursuant to § 2241 [ECF No. 221], which is discussed above.

Westfall cannot accomplish through this nominal discovery motion what he could not via his pro se Motion to Dismiss. Procedurally, he cannot relitigate in this discovery motion issues that have been decided. As a factual and legal matter, his motion fails on the merits.

Westfall misapprehends the facts and law before the Court. As noted above, the Court has already concluded, under the totality of the circumstances, the officers present had a reasonable, articulable suspicion that a drug transaction had occurred. Westfall's various motions and arguments lack consideration of the totality of the circumstances and focus primarily on the hand-to-hand transaction. The fact that the police did not confirm that drugs were passed misses the point. See Mosely, 878 F.3d a 252. The police do not have to know, they need only have a reasonable suspicion, and reviewing courts are required to consider all of the relevant facts and circumstances.[16] The undersigned's findings of fact from the evidentiary hearing and related legal analyses, which were provided in the earlier Report and

---

[16] "[A] Terry stop is justified only when the officer points to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." United States v. Harvey, 1 F.4th 578, 581 (8th Cir. 2021) (citations and internal quotations omitted). "A reviewing court must look at the totality of the circumstances, allowing officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" Id. at 581 (emphasis supplied) (citations and internal quotations omitted). "The totality-of-the-circumstances test precludes [a] divide and conquer analysis. An officer may have reasonable suspicion to conduct a Terry stop based on a combination of factors even where no single factor, considered alone, would justify a stop." Id. at 582 (emphasis supplied) (citation and internal quotations omitted).

Recommendation [ECF No. 128] and adopted by Judge Autrey [ECF No. 159], address the totality of the circumstances, many of which are not addressed in Westfall's pro se arguments. Westfall does not advance any law or facts previously unknown to the Court.  Thus, there is no need to re-evaluate the Court's prior findings of fact or legal analyses which Westfall continues to challenge.

To the extent Westfall's pro se Motion to Compel Evidence that Supports Probable Cause is a discovery motion, it is denied.  To the extent it is a substantive motion to suppress or reconsider a prior decision of his suppression motion, the undersigned recommends that it be denied.

**VI.** **_Pro Se_ Motion to Compel Evidence of Exclusive Jurisdiction [ECF No. 279]**

In his pro se Motion to Compel Evidence of Exclusive Jurisdiction, Westfall demands his release in this matter and that he be transferred to the "proper jurisdiction of the State of Missouri."  [ECF No. 279 at 4]  Westfall contends that "the federal government is without jurisdiction in prosecuting this case," and that his continued custody "violates [his] rights under amendments 5th, 6th, and 13th of the United States Constitution."  [Id.]  Westfall's arguments in support of his demand appear to focus on the pending felon-in-possession charge.  Westfall's arguments are somewhat similar to sovereign citizen-type arguments.  For example, he avers that the federal government is operating under maritime and admiralty law.  He focuses a great deal of his attention on taxation of firearms and firearm transfers within the state involving "gifted or bartered" guns.  [Id. at 2]  He also suggests, that under Missouri law, felons are not prohibited from owning or possessing firearms.  He further relies on the Tenth Amendment to the Constitution to advance his belief that the federal government cannot charge him with firearm offenses.

The government opposes this motion, noting that Judge Autrey addressed these jurisdictional issues in denying Westfall's earlier filed pro se Habeas Corpus motion.  [See ECF Nos. 229, 266]  And to the extent Westfall's motion to compel evidence of jurisdiction relies on the right to bear arms under Missouri's Constitution, the government contends that the Supremacy Clause of the U.S. Constitution trumps Missouri's Constitution.[17]  The government further argues that a key factual basis for Westfall's motion to compel is a misunderstanding of Missouri law, noting that both Missouri and the United States prohibit felons from possessing firearms.  [See ECF No. 286 at 12, citing 18 U.S.C. § 922(g)(1); Mo.Rev.Stat. § 571,070; Alpert v. Missouri, 543 S.W.3d 589, 591 (Mo. banc 2018)]

Westfall's motion to compel is a motion to dismiss dressed up as a discovery motion.  It does not identify any category or type of evidence that the government must produce but has not. Further, the government is correct that most of the arguments raised in this motion to compel were rejected by Judge Autrey when he denied Westfall's pro se Habeas Corpus motion.  [ECF Nos. 229, 266]  Westfall has not identified any legal or factual reasons to permit him to relitigate those issues.  Westfall's arguments regarding Missouri's firearms laws and limitations on federal jurisdiction over firearms offenses are misplaced and foreclosed, as discussed above relative to his Second Amendment Preservation Act motion [ECF No. 227].

To the extent Westfall's pro se Motion to Compel Evidence of Exclusive Jurisdiction is a discovery motion, it is denied.  To the extent it is a substantive motion to dismiss counts or to reconsider the prior decision on his pro se Habeas Corpus motion, the undersigned recommends that it be denied.

---

[17]  The government also notes that aspects of Westfall's pro se Motion to Compel Evidence of Exclusive Jurisdiction touch on the same matters raised in his challenge premised on Missouri's Second Amendment Preservation Act.  These issues are addressed elsewhere in this Report and Recommendation.

**VII.** <u>**Motion to Suppress Evidence from 2019 Cadillac**</u> **[ECF No. 282]**

Westfall asks the Court to suppress evidence seized from the Cadillac the police observed in the suspected hand-to-hand drug transaction.  Westfall contends that the search violated the Fourth Amendment and, therefore, the evidence seized should be suppressed for several reasons, namely:  (1) the search was conducted without a warrant; (2) neither Westfall nor any other occupant of the vehicle consented to the search; and (3) the police lacked probable cause to search the vehicle.  Westfall contends that he has standing to challenge the search of the Cadillac because he is charged with crimes that involve evidence seized during that search.  He also alleges that no evidence was produced at the original evidentiary hearing regarding the ownership of the Cadillac.  Finally, Westfall argues that the police lacked reasonable suspicion or probable cause to search the Cadillac, he notes that the occupants were already in custody so there were no exigent circumstances or officer safety concerns that would justify looking in and searching the Cadillac.

The government opposes Westfall's challenge to the Cadillac's search for several reasons.  First, the government contends that Westfall waived this issue at the original evidentiary hearing in this matter.  In this regard the government notes that Westfall's original, court-appointed attorney challenged the search of the vehicle but withdrew that challenge due to standing issues.  Second, and relatedly, the government contends that Westfall does indeed lack standing to challenge the search.  Finally, the government argues that even if the Court were to address the merits of Westfall's motion, the existing record from the evidentiary hearing demonstrates that no constitutional violation occurred.

On May 9, 2022, the undersigned held a status hearing on all pending motions.  Westfall was present with his appointed counsel, Mr. Eisenhauer, and the government was represented by

an AUSA Dunkel.  At that hearing, the undersigned explained to Westfall and his attorney that Judge Autrey rejected an attempt by Westfall's second attorney, Ms. Bernsen, to raise this Cadillac search issue.  [See ECF No. 204, Motion for Leave to File Additional Pretrial Motions (Dec. 13, 2020); denied by ECF No. 206, Opinion Memorandum and Order (February 2, 2021)] The undersigned explained to Westfall that I was not at liberty to overrule or reconsider Judge Autrey's prior Order.  During the exchange it was also manifest that Westfall was not going to not claim any possessory interest in the Cadillac.[18]

## A.    Waiver and Fourth Amendment Standing

### 1.    *Waiver*

The first issue the Court must decide is whether Westfall waived any challenge to the search of the Cadillac.  It cannot be disputed that Westfall challenged the Cadillac search in his original suppression motion.  [ECF No. 77]  It also cannot be disputed that, at the outset of the evidentiary hearing on that motion, Westfall's first court-appointed attorney advised the Court that it was the defense's position that the Cadillac belonged to someone else, so Westfall lacked standing to challenge the search.  (Tr. at 4)  As a result, the government was not put to the test on the search and did not present additional evidence or testimony regarding that search.

Well after the Court ruled on Westfall's original suppression motion, Ms. Bernsen, Westfall's second court-appointed attorney, filed a Motion for Leave to File Additional Pretrial Motions [ECF No. 204], specifically noting the search of the Cadillac.  Judge Autrey denied that motion, concluding that Westfall waived any Fourth Amendment challenge to the search of the Cadillac by withdrawing the challenge at the evidentiary hearing and not including it in any objections to the undersigned's Report and Recommendation.  [ECF No. 206 at 3]  Judge Autrey

---

[18]  Westfall's original court-appointed attorney affirmatively represented at the evidentiary hearing that the Cadillac belonged to somebody else.  (Tr. at 4)

further found that Westfall failed to show good cause to be relieved of the waiver, noting in particular that Westfall still had not alleged any property or possessory interest in the Cadillac sufficient to permit him to mount a Fourth Amendment challenge to the search of that vehicle. [Id. at 4]

Judge Autrey has made a finding of waiver.  Westfall has not identified any law that would permit a Magistrate Judge to revisit that finding.  Even if the undersigned could reconsider the issue, the undersigned would conclude that Westfall waived the issue.

### 2.    *Standing*

Assuming arguendo that Westfall has not waived his right to raise a Fourth Amendment challenge to the search of the Cadillac, the next issue to consider is whether Westfall has standing to bring such a challenge.

"The Constitution forbids unreasonable searches and seizures, but Fourth Amendment rights are personal rights and may not be vicariously asserted." United States v. Wright, 844 F.3d 759, 762 (8th Cir. 2016) (citing Rakas v. Illinois, 439 U.S. 128, 133-34 (1978)).  "Fourth Amendment standing is 'useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search,' but it does not implicate Article III jurisdiction." United States v. Bettis, 946 F.3d 1024, 1027 (8th Cir. 2020) (quoting Byrd v. United States, 138 S. Ct. 1518, 1530 (2018)).  Thus, a defendant seeking suppression has the "burden to establish 'that his own Fourth Amendment rights were violated by the challenged search or seizure.'" United States v. White, 962 F.3d 1052, 1055 (8th Cir. 2020) (quoting Rakas, 439 U.S. at 132 n.1); see also United States v. Sierra, 11 F.4th 931, 933 (8th Cir. 2021) (explaining that a defendant must make an initial showing of a reasonable expectation of privacy in the property searched).

When it comes to vehicles, a "mere passenger" generally "does not have standing to challenge [the] vehicle search." United States v. Russell, 847 F.3d 616, 618 (8th Cir. 2017) (citations omitted).  It is Westfall's burden to prove his reasonable expectation of privacy in the Cadillac, and he has offered no facts to support a conclusion that he had any possessory or property rights relative to that vehicle or the contents therein.  See United States v. Davis, 943 F.3d 1129, 1132 (8th Cir. 2019) ("A passenger who asserts 'neither a property nor a possessory interest' in a vehicle lacks a reasonable expectation of privacy in that vehicle.") (quoting Rakas, 439 U.S. at 148).  Thus, "[e]ven where a search is unlawful, a passenger without such an interest in the vehicle normally cannot challenge its search or suppress resulting evidence." Davis, 943 F.3d at 1132 (citing United States v. Anguiano, 795 F.3d 873, 878-79 (8th Cir. 2015)).  The fact that evidence from the Cadillac may incriminate him does not confer Fourth Amendment rights.

Upon consideration of the entire record in this case, Westfall has failed to demonstrate he has Fourth Amendment rights relative to the Cadillac.

**B.    Probable Cause and the Automobile Exception**

The record supports the conclusion that Westfall lacks Fourth Amendment standing to challenge the search of the Cadillac.  It is not surprising, therefore, that his prior attorney withdrew any challenge to the search of that vehicle.  Nonetheless, to make a more complete record for later review, the undersigned will address the substance of Westfall's challenge of the search.

It is not disputed that the police searched the Cadillac without a warrant.  "The Fourth Amendment [normally] requires law-enforcement officers to obtain a warrant before initiating a search, but '[d]uring a lawful investigatory stop, officers may search a vehicle [without a warrant] when they develop probable cause to believe it contains contraband or evidence of

criminal activity.'" <u>United States v. Merrett</u>, 8 F.4th 743, 751 (8th Cir. 2021) (quoting <u>United States v. Williams</u>, 955 F.3d 734, 737 (8th Cir. 2020)).  <u>See also</u> <u>Carroll v. United States</u>, 267 U.S. 132, 160-62 (1925) (automobile exception to the warrant requirement); <u>United States v. Dunn</u>, 928 F.3d 688, 693(8th Cir. 2019) ("As long as the law enforcement officials have probable cause, they may search an automobile without a warrant under the automobile exception.") (citation and quotation omitted).

"Probable cause exists when there is a fair probability that [contraband or] evidence of a crime will be found in a particular place." <u>United States v. Faulkner</u>, 826 F.3d 1139, 1144 (8th Cir. 2016) (quotations and citations omitted).  Like reasonable suspicion, probable cause requires consideration of the totality of the circumstances and "a common sense approach." <u>Id.</u>  As 'a practical and common-sens[e] standard,' probable cause leaves plenty of room to draw reasonable 'inferences' from less-than-perfect evidence." <u>United States v. James</u>, 3 F.4th 1102, 1105-06 (8th Cir. 2021) (quoting <u>Cronin v. Peterson</u>, 982 F.3d 1187, 1197 (8th Cir. 2020)).

Based on the testimony and evidence from the evidentiary hearing, the undersigned finds that the police had probable cause to search the Cadillac.  In the prior Report and Recommendation [ECF No. 128], the undersigned found that Officer Njeri had reasonable suspicion to stop Westfall, who by that point in time had exited the Cadillac in haste.  Those same facts and circumstances provided at least reasonable suspicion to temporarily seize the Cadillac, which had heavily tinted windows, was observed circling the block, and was observed engaged in a suspected hand-to-hand drug transaction.  The police arguably had probable cause to search the vehicle before Officer Njeri encountered Westfall based on all of the events leading up to that encounter.  But the facts learned during the encounter with Westfall enhance probable cause.  At the outset of his encounter with Westfall, Officer Njeri saw the butt of a gun hanging

28

out of Westfall's pants.  Westfall was justifiably detained. the loaded firearm was retrieved, and suspected drugs were seized from his pants.  Officer Njeri testified that Westfall yelled and cursed at the police, and he told Officer Njeri that he was lucky that the officer drew his gun first.

Applying a commonsense analysis to the facts and circumstances available to the police support a finding that the police had probable cause to believe that evidence of drug trafficking crimes would be found in the Cadillac.  Therefore, a warrantless search of the Cadillac was constitutional under the automobile exception.

Finally, even if the facts and circumstances already established at the original evidentiary hearing did not provide probable cause to search the Cadillac pursuant to the automobile exception, the police had legitimate officer safety concerns for at least looking inside the Cadillac.  As already explained, the police had reasonable suspicion to conclude that the Cadillac was involved in a drug transaction.  The police knew that Westfall, who they observed exit the Cadillac, was armed.  The police, therefore, could conduct a limited search of the Cadillac, which had heavily tinted windows, for other persons or dangerous weapons.  See Michigan v. Long, 463 U.S. 1032 (1983); United States v. Goodwin-Bey, 584 F.3d 117, 1120 (8th Cir. 2009).

### C.   Conclusions – Cadillac Search

The undersigned recommends that the Court deny Westfall's motion to suppress evidence seized from the Cadillac.  First, the Court has already concluded that Westfall waived any Fourth Amendment challenge to that search.  The undersigned finds that Westfall has not identified any prejudice or lawful reason to grant him relief from that waiver.  Second, Westfall has failed to offer any facts to establish Fourth Amendment standing, that is, that his own Fourth Amendment rights were violated by the search.  Third, even if Westfall had not waived the issue and had

standing, the existing record provides sufficient facts to support a finding of probable cause. Finally, even if the police lacked probable cause, they had sufficient reasonable suspicion to conduct a limited search of the Cadillac for other persons or dangerous weapons. Thus, the search of the Cadillac was constitutional.[19]

## ORDERS AND RECOMMENDATIONS

Accordingly,

**IT IS HEREBY RECOMMENDED** that Westfall's Pro Se Motion to Dismiss [ECF NO. 221] be DENIED.

**IT IS HEREBY ORDERED** that Westfall's Motion for Disclosure of Grand Jury Testimony [ECF No. 225] is DENIED.

**IT IS FURTHER ORDERED** that Westfall's Motion for Disclosure of Information Surrounding the Anonymous Tip [ECF No. 226] is DENIED.

**IT IS FURTHER RECOMMENDED** that Westfall's Motion to Prohibit State Employee Testimony to Enforce Federal Firearms Law [ECF No. 227] be DENIED.

**IT IS FURTHER ORDERED** that, to the extent Westfall's Pro Se Motion to Compel Evidence of Probable Cause [ECF No. 278] is a discovery motion, it is DENIED.

**IT IS FURTHER RECOMMENDED** that, to the extent Westfall's Pro Se Motion to Compel Evidence of Probable Cause [ECF No. 278] is a suppression motion, it should be DENIED.

**IT IS FURTHER ORDERED** that, to the extent Westfall's Pro Se Motion to Compel Evidence of Exclusive Jurisdiction [ECF No. 279] is a discovery motion, it is DENIED.

---

[19] The undersigned finds that it would not be necessary to re-open the evidentiary hearing because the existing record is sufficient. The government has proffered significant, additional facts that it represents it would prove if the Court were to re-open the hearing. The undersigned has not considered those facts in this Report and Recommendation.

**IT IS FURTHER RECOMMENDED** that, to the extent Westfall's <u>Pro</u> <u>Se</u> Motion to Compel Evidence of Exclusive Jurisdiction [ECF No. 279] is a motion to dismiss or a motion to reconsider a prior order of the Court, it should be DENIED.

**IT IS FURTHER RECOMMENDED** that Westfall's Motion to Suppress Evidence from the 2019 Cadillac [ECF No. 282] be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of the Orders herein before a District Court Judge upon a showing that the order complained of is clearly erroneous or contrary to law.  The parties are advised that they have fourteen (14) days in which to file written objections to the foregoing Order, Report, and Recommendation unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).  <u>See</u> <u>also</u> 28 U.S.C. § 636(b)(1)(A), Fed. R. Crim. P. 59(a).

This matter will be set for trial by further order of the court, before the Honorable Henry E. Autrey, United States District Judge.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  16th   day of <u>May</u>, 2022.